## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARKUS HUNTER,

     **Plaintiff,**

     **v.**

                           **Case No.  06-cv-444-DRH-DGW**

C/O DUTTON, C/O MASON,
KENNETH HAMILTON,
ROBERT S. FREY, ROGER E.
WALKER, JR., LESLIE MARKEL,
JACKIE MILLER, and DAVID
MITCHELL,

     **Defendants.**

## MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

### I.  Introduction

Pending before the Court is Defendants' Amended Motion for Summary Judgment (Doc. 39).  Defendants, who are all employed by the Illinois Department of Corrections ("IDOC"), argue they are entitled to summary judgment on Plaintiff Markus Hunter's ('Plaintiff') retaliation claim brought pursuant to 42. U.S.C. §1983, because their evidence shows Plaintiff's claim fails.  Defendants additionally maintain Plaintiff cannot prevail because they are all entitled to qualified immunity.  For the reasons discussed below, the Court grants in part and denies in part Defendants' motion for summary judgment.

### II.  Facts

Plaintiff is an inmate housed at the Tamms Correctional Center ("Tamms").  Defendants Kirk Dutton, Doug Mason, and Kenneth Hamilton were at all relevant times Correctional Officers at Tamms.  Defendant Robert S. Frey was at all relevant times the Warden at Tamms.  Defendant Roger Walker, Jr., was at all relevant times the Director of the Illinois Department of Corrections ("IDOC").  Defendant Leslie Markel was all

relevant times the Grievance Officer.  Defendant Jackie Miller was at all relevant times a Chairperson of the Administrative Review Board ("ARB").

This case surrounds certain events that occurred on March 20, 2005, at Tamms where Plaintiff is incarcerated.  According to Defendants, at approximately 9:00 that morning, Defendant Mason and non-defendant Wehrheim, both Tamms correctional officers, began conducting a routine "shakedown" of Plaintiff's cell (Doc. 39-2, Affidavit of Kirk Dutton, ¶4).  IDOC policy requires prison staff members to perform such shakedowns of inmate cells every 60 days.  *Id.* at ¶5. According to Defendants, shortly after the shakedown began, officer Wehrheim had to leave Plaintiff's cell to perform unrelated duties, and Defendant Dutton replaced Wehrheim and continued searching for unauthorized items in Plaintiff's cell. *Id.* at ¶7.

Soon after Wehrheim left, Defendant Mason found two inhalers in Plaintiff's cell, one which was concealed (Doc. No. 39-2, Affidavit of Doug Mason, ¶ 8.)  IDOC policy prohibits inmates from possessing more than one prescribed inhaler at a time; therefore, the officers suspected Plaintiff's additional inhaler violated this policy. *Id.* at ¶¶9, 11.  To confirm whether their suspicions were correct, Defendant Dutton contacted the nurse who was on duty to determine whether Plaintiff was authorized to have two inhalers in his cell (Doc. 39-2, Affidavit of Kirk Dutton, ¶10).  The nurse told Dutton that both inhalers contained the same medication and that Plaintiff was not supposed to have more than one inhaler.  *Id.* Consequently the officers confiscated the inhaler with the oldest date on it, turned it over to the shift commander, and split up the paperwork they had to write about the incident between them (Doc. 39-2, Affidavit of Doug Mason, ¶¶12, 16).

Defendant Dutton wrote up the disciplinary report that charged Plaintiff with possessing drugs or drugs paraphernalia and possessing contraband or unauthorized property.  *Id.* at ¶12.  Defendant Mason wrote up the shake down slip,

which states that officer Wehrheim witnessed the shakedown and does not mention Defendant Dutton. *Id.* Defendant Dutton states he was not motivated to write the disciplinary report by any grievance or lawsuit Plaintiff filed, and further states he was unaware of any grievance or lawsuit that Plaintiff had filed when he wrote the disciplinary report (Doc. 39-2, Affidavit of Kirk Dutton, ¶¶13-14). Dutton says his only motivation to write the report was that Plaintiff possessed two inhalers, which violated Department Rules 203 and 308. *Id.* at ¶16. Dutton played no part in deciding whether Plaintiff was guilty of committing the rules, and what discipline, if any, Plaintiff would receive. *Id.* at ¶¶ 17-18.

Similar to Defendant Dutton's assertion, Defendant Mason also states he was not motivated to shake down the Plaintiff's cell by any grievance or lawsuit Plaintiff filed. (Doc. 39-2, Affidavit of Doug Mason, ¶13). He contends he "did not know of any grievances or lawsuits" Plaintiff had submitted or was contemplating submitting at the time of the shake down. *Id.* at ¶14. To explain why Defendant Dutton's name does not appear on the shake down slip, Defendant Mason contends states "Officer Wehrheim was the witness on the shake down slip because he filled out the date, time and witness when he started the shake down." *Id.* at 12. Similar to Defendant Dutton, Defendant Mason claims that he did not make the decision concerning the consequences of Plaintiff's disciplinary report. *Id.* at ¶¶ 17-18.

Three days after the shakedown, Tamms Adjustment Committee (the "committee") conducted a hearing concerning the disciplinary ticket issued to Plaintiff. (Doc. No. 31-2, Affidavit of David Mitchell, ¶1). The committee decides whether an inmate is indeed guilty of committing the rules for which he has been charged. *Id.* at ¶ 2. Defendants Mitchell and Hamilton served on the committee. *See* Doc. No. 31-2, Affidavits of David Mitchell and Kenneth Hamilton. The committee reviewed a statement written by Plaintiff in which Plaintiff admitted he possessed two inhalers but disputed

his guilt because the nurse failed to pick up his old inhaler when she delivered another one (Doc. No. 31-2, Affidavit of Kenneth Hamilton, ¶ 5). *See also* Defendants' Exhibits 8 (Plaintiff's written statement stating same). Plaintiff also alleged in his statement that Defendants Dutton and Mason wrote the disciplinary report and shake down slip in retaliation against him. *Id.*

To make an informed decision, the committee contacted Plaintiff's treating physician who confirmed he did not give Plaintiff permission to possess more than one inhaler (Doc. No. 31-2, Affidavit of Kenneth Hamilton, ¶7). The committee also reviewed a "destruction log" that showed Plaintiff had recently turned in an inhaler so that it could be destroyed. *Id.* at ¶8. Defendant Mitchell also contacted the nurse whom Plaintiff accused of failing to pick up his old inhaler (Doc. No. 39-2, Affidavit of David Mitchell, ¶¶ 5-6). That nurse told defendant Mitchell that Plaintiff never asked her to exchange his inhalers. *Id.*

The committee ultimately found Plaintiff guilty for violating the prison's rules, and accordingly recommended that certain disciplinary measures take place. *Id.* at ¶¶ 9-10. Defendants Hamilton and Mitchell contend their decision to find Plaintiff guilty was based on the evidence presented to them, and they further found no merit to Plaintiff's claim that the disciplinary report was written to retaliate against Plaintiff (Doc. No. 31-2, Affidavit of Kenneth Hamilton, ¶¶ 11, 12) (Doc. No. 31-2, Affidavit of David Mitchell, ¶¶ 11, 12.)

Unsatisfied with the committee's decision, Plaintiff submitted a grievance, in which he complained again that the disciplinary report was written in retaliation against him for utilizing the grievance process and for filing lawsuits against Defendants Mason and Dutton as well as other Tamms staff members (Doc. No. 39-2, Affidavit of Leslie Markel, ¶¶ 2-4). To investigate Plaintiff's allegations, Defendant Markel, the Tamms Grievance Officer, interviewed a Tamms nurse about the prison's procedures

relating to inhalers. *Id.* at ¶10. After reviewing the disciplinary report, the shake down slip, and the committee's report about the incident, Defendant Markel, recommended to the warden that Plaintiff's grievance be denied. *Id.* at ¶12. She determined that Plaintiff knew about the rule limiting the number of inhalers, and Plaintiff admitted his knowledge in his written statement to the committee. *Id.* at ¶11. Defendant Markel maintains that her recommendation was not in retaliation for any lawsuits or grievances Plaintiff filed. *Id.* at ¶¶ 13-14.

Defendant Shelton Frey, the Tamms warden, never personally reviewed Plaintiff's grievance. (Doc. 39-2, Affidavit of Charlene Meskill, ¶ 9). However, Charlene Meskill, his executive secretary who had the authority to sign his signature, reviewed it on Frey's behalf because part of her duties included reviewing appealed grievances. *Id.* at ¶¶ 2-3, 5. Meskill ultimately concluded that Defendant Markel's recommendation to deny Plaintiff's grievance was correct and signed Defendant Frey's signature on Plaintiff's grievance. *Id.* at ¶¶ 9, 10, 12.

As a last resort to resolve his complaints through the prison's grievance channels, Plaintiff appealed the denial of his grievance to the ARB. *See Doc.* 31-2, Affidavit of Jackie Miller. Defendant Jackie Miller, an ARB chairperson, determined Plaintiff had violated prison rules concerning inhalers, and, based on the information she reviewed, upheld the denial of his grievance. *Id.* at ¶¶1, 11-12. Defendant Miller made this determination by reviewing Plaintiff's grievance, the grievance officer's report, Plaintiff's disciplinary report, and the adjustment committee summary. *Id.* at ¶5. Defendant Miller's review of these documents assured her that Plaintiff had committed the rules violations and that Plaintiff's allegations concerning staff misconduct were unfounded. *Id.* at ¶6. Accordingly, she wrote a letter that summarized her findings, signed it on behalf of the ARB, and forwarded the letter to Plaintiff and Defendant Frey. *Id.* at ¶7. Terri Anderson, the head of the ARB and Defendant Roger Walker's (the

director) designee, signed Walker's signature to this letter.  *Id.* at ¶¶ 9-10.  Defendant Walker never personally reviewed Plaintiff's grievance and was never aware that it existed.  *Id.* at ¶10.  After Plaintiff failed to satisfactory resolve his concerns with the IDOC, Plaintiff filed this lawsuit on June 12, 2006.

As expected, Plaintiff naturally disagrees with Defendants' version of the facts raised in their motion for summary judgment, and filed an "affidavit" to oppose them.  Although Plaintiff admits that Defendant Mason and Officer Wehrheim were present during the shakedown, he claims Defendant Dutton did not participate in any way in the shakedown of Plaintiff's cell (Doc. 43, Affidavit of Markus Hunter, pp. 3-5, p. 10).  He further states that Defendant Dutton knew he filed five grievances against him during the months of November 2004 – February of 2005, and that Defendant Mason knew Plaintiff filed grievances against him on November 8, 2004, November 10, 2004, and December 12, 2004.  *Id.* at p. 4.  In support of those contentions, Plaintiff included copies of his grievances and his grievance counselor's reports that contain statements Defendants Dutton and Mason made to Tamms staff when they were questioned about Plaintiff's grievances.  *See* Doc. 43, pp. 38, 40, 42, 44, 46, 48, 50, 52, 57, 59, 61, and 63.  Plaintiff also submitted affidavits from three of his fellow inmates who resided in Plaintiff's wing on the day of the shakedown to further support his claim against Defendants Dutton and Mason.

Alejarudro Villazara Jr. stated that while Plaintiff was taking a shower, Defendant Mason and Officer Weihrem shook down Plaintiff's cell.  *Id.* at pp. 27-28.  When Plaintiff returned, Plaintiff asked officers Mason and Weihrem – "each time they came upon the wing" - why they confiscated his inhaler, and they told Plaintiff that he would be able to breathe if only he would drop those lawsuits against staff members.  *Id.*  Villazara also stated he witnessed Plaintiff complain to various medical professionals that officers Weihrem and Mason took his inhaler.  *Id.*

Samuel Santiago, who also lived in the same wing as Plaintiff on the date of the incident, claims he saw Officers Weihreim and Mason come into their wing, and he heard them shaking down a cell. *Id.* at pp. 33-35. Santiago contends he heard Plaintiff complain about Mason and Weihreim taking his inhaler, but Weihreim denied having any knowledge about Plaintiff's inhaler. *Id.* Santiago additionally contends he heard Plaintiff ask Dutton and Mason about the location of his inhaler. *Id.* He further contends Defendant Mason answered Plaintiff by stating "you know what happened to your asthma inhaler I took them when you drop that lawsuite [sic] that's when we are going to stop." *Id.*

Sergio Vera made a statement that "on numerous occasions" he heard Mason and Dutton tell Plaintiff that they were not going to stop harassing him until he dropped the lawsuits against them and stopped writing grievances. *Id.* at pp. 29-32. He never witnessed Dutton going in Hunter's cell to shake it down on March 20, 2005.

Plaintiff's response to Defendants' motion for summary judgment as to Defendants Markel, Hamilton, and Mitchell is essentially the same. Plaintiff argues these three defendants all assisted Defendants Dutton and Mason *in their retaliatory acts against* Plaintiff because they knew the facts in the disciplinary report were false. *See* Doc. No. 43, pp. 15-25. Specifically, Plaintiff argues Defendant Markel failed to examine the shake down slip as thoroughly as she claims, and Defendants Hamilton, Mitchell, and Markel abused their power by finding Plaintiff guilty for violating prison rules because the shake down slip shows Dutton did not participate. *Id.* at pp. 16, 23-24. Plaintiff further alleges "there was no disciplinary report written, and there was no contraband found." *Id.* Plaintiff chose not to respond to the evidence Defendants submitted concerning Defendants Frey, Miller, and Walker. *See* Doc. No. 43.

### III.  <u>Summary Judgment Standard</u>

According to Federal Rule of Civil Procedure 56(c), summary judgment is proper only when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Haefling v. United Parcel Service, Inc.,* **169 F.3d 494, 497 (7th Cir. 1999); *Dempsey v. Atchison, Topeka and Santa Fe Railway Co.,* 16 F.3d 832, 836 (7th Cir. 1994)**.  "[I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* **477 U.S. 317, 320 (1986)**.  The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party.  *Adickes v. S.H. Kress & Co.,* **398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Miller v. Borden, Inc.,* 168 F.3d 308, 312 (7th Cir. 1999)**.

A fact is material if it is outcome determinative under applicable law. *Hardin v. S.C. Johnson & Son, Inc.,* **167 F.3d 340, 344 (7th Cir. 1999); *Smith v. Severn,* 129 F.3d 419, 427 (7th Cir. 1997); *Estate of Stevens v. City of Green Bay,* 105 F.3d 1169, 1173 (7th Cir. 1997)**.  Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. *Plair v. E.J. Brach & Sons,* **Inc., 105 F.3d 343, 346 (7th Cir. 1997); *Lawshe v. Simpson,* 16 F.3d 1475, 1478 (7th Cir. 1994); *Dempsey,* 16 F.3d at 836**.  In deciding such a motion, the trial court must determine whether the evidence presented by the opposing party is such that a reasonable jury might find in favor of that party after a trial. *Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212**

(1986). *See also Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986); *Haefling*, 169 F.3d at 497-98.

## IV. Analysis

To prevail on a retaliation claim, a plaintiff must demonstrate that a defendant retaliated against him for engaging in constitutionally protected conduct. *See Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996). "Otherwise permissible actions by prison officials can become impermissible if done for retaliatory reasons." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000). The plaintiff must prove that his conduct was a "motivating factor" in the state official's decision to retaliate against him. *Hasan v. United States Dept. of Labor,* 400 F.3d 1001, 1006 (7th Cir. 2005). However, a "motivating factor" is not "necessarily the reason" the state official takes a certain action. *Id.* "A motivating factor . . . is a factor that weighs in [on] the defendant's decision to take the action complained of-in other words, it is a consideration present to his mind that favors, that pushes him toward, the action." *Id.*

"An act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper." *Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005) (citing *Matzker v. Herr,* 748 F.2d 1142, 1150 (7th Cir. 1984) (limited on other grounds by *Salazar v. Chicago*, 940 F.2d 233, 240-41 (7th Cir. 1991). "This includes retaliation against an inmate for exercising his constitutional right to access the courts or to use the prison grievance process." *Id.* An inmate may therefore be able to prevail under §1983 if he produces evidence that prison officials, in an effort to retaliate against him for using the prison's grievance process, issued unfounded disciplinary tickets against him. *See Black v. Lane,* 22 F.3d 1395, 1402-03 (7th Cir. 1994). However, the burden on the inmate is "high" as he must show that his protected conduct was a motivating factor for the retaliation. *Babock,* 102 F.3d at 275. Moreover, "the

ultimate question is whether events would have transpired differently absent the retaliatory motive." *Id.* "If the same action would have occurred regardless of the retaliatory motive, the claim fails." **Spiegla v. Hull, 371 F.3d 928, 942 (7th Cir. 2004)**.

In their motion for summary judgment, Defendants contend their evidence shows they their actions were not taken in retaliation against Plaintiff for filing lawsuits or grievances, they are all entitled to qualified immunity, and Defendants Frey and Walker can not be held liable under 42 U.S.C. §1983, because neither one of them were personally involved with Plaintiff's grievance.

For the following reasons, the Court finds that Plaintiff's case against Defendants Dutton and Mason should proceed to trial and that summary judgment should be granted as to the remaining Defendants.

**Defendants Dutton and Mason**

Before discussing Plaintiff's retaliation claim against Defendants Dutton and Mason, the Court must first address the "affidavits" Plaintiff included in his response to Defendants' motion that concern these defendants. As noted above, Plaintiff submitted four statements – one written by Plaintiff and three written by his fellow inmates. Plaintiff and his witnesses titled their statements "affidavits" and stated that they made their statements under oath. These documents, however, do not contain a notary's signature or anything else that would demonstrate the authors swore to the truth of their proclamations; therefore, notwithstanding their titles, these documents are not "affidavits." **See Pfeil v. Rogers, 757 F.2d 850, 859 (7th Cir. 1985) (noting "[a]n affidavit is a statement reduced to writing and the truth of which is sworn to before someone who is authorized to administer an oath.")**. Despite this misstep, the Court can consider Plaintiff's, Villazara's, and Santiago's statements because they were made under penalty of perjury. 28 U.C.S. §1746 provides:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, *with like force and effect*, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury . . . .

**28 U.S.C. §1746 (emphasis added).  *See Pfeil*, 757 F.2d at 859 (noting "so long as the documents comply with 28 U.S.C. §1746 . . . a district court should not be unnecessarily hyper-technical and overly harsh on a part who unintentionally fails to make certain that all technical, non-substantive requirements of execution are satisfied."); *see also Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (citation omitted) ("by declaring under penalty of perjury that the [response] was true, ... he converted the [response], or rather those factual assertions in the [response] that complied with the requirements for affidavits specified in the rule ... into an affidavit.").**  Unlike Plaintiff and his other witnesses, however, Sergio Vera, did not do the same and the Court will not consider his statements.  *See* Doc. No. 43, pp. 29-32.

The essence of Plaintiff's claims against Defendants Dutton and Mason is that their motivation for writing the disciplinary report and shake down slip was to retaliate against Plaintiff for filing grievances and lawsuits against them.  Defendants Dutton and Mason denied having any knowledge about the grievances Plaintiff filed against them; however, Plaintiff's declaration and the grievances submitted contradict these assertions.  Although Plaintiff did not mention any specific lawsuits, he set forth specific dates he filed five grievances against Dutton and three grievances against Mason soon before the shakedown occurred.  Document No. 43, pp. 4, 6, 11, 12.  Plaintiff also

declared and submitted evidence that these Defendants both provided a written response to the grievance officers about Plaintiff's grievances. *Id.* Plaintiff also produced witness who stated that they heard Mason and Dutton tell Plaintiff that *the reason* behind their actions on March 20, 2005, was because of Plaintiff's lawsuits and grievances. Doc. 43 at pp. 27, 28, 33-35. The "level of detail" in Plaintiff's declaration, coupled with the other inmates' statements, provides an inference in favor of denying Defendants' motion. ***See Gray v. Hinsley,* 2008 WL 2005029, * 8 (S. D. Ill. May 8, 2008) (citations omitted) ("while it is possible in some instances to prove retaliation through direct written evidence . . . in most instances, it is not possible to do so, and instead retaliation must be proved through circumstantial evidence.") *Dale v. Lappin,* 376 F.3d at 656 (noting that the "level of detail" in the plaintiff's affidavit that alleged specific facts precluded summary judgment)**.

Further, Plaintiff's declaration, witness statements and evidence also create questions of material fact as to whether Mason and Dutton retaliated against Plaintiff for filing grievances. There are also questions of fact as to whether Dutton participated in the shakedown since Weihreim, rather than Dutton, signed as a witness to the shakedown; whether contraband was found and whether initially a disciplinary report was written and whether it was then written in retaliation. *See* Doc. 43, Affidavit of Markus Hunter, pp. 3-5, 10; Plaintiff's Exhibit 1, p. 65 and Plaintiff's Exhibit 7, p. 56. Further, the Court finds Defendants' Exhibit 15 – Shakedown Record/Confiscated Contraband – to be questionable. Plaintiff's Exhibit 1which appears to be an earlier version of Defendants' Exhibit 15 is written and signed by Mason; witnessed by Weihreim and states that no contraband was found and that no disciplinary report was written and that no incident report was written. Plaintiff's Exhibit 7 which appears to be a version of Defendants' Exhibit 15 is written and signed by Mason, witnessed by Weihreim and states that contraband was found, that a disciplinary report was written

and that an incident report was written.  It also includes an unreadable/unidentifiable signature of a supervisor with a time of 9:25 a.m.  While Defendants' Exhibit 15 contains "s/IDOC personnel" where Weihreim's name was on the previous reports and where in place of the unreadable/unidentifiable signature of a supervisor.  Clearly these discrepancies between these reports create a question of material fact.  It is not the Court's function at this stage of the proceedings to make credibility determinations and to believe Defendants' side of the story.  ***Washington v. Haupert,* 481 F.3d 543, 548 (7th Cir. 2007)**.  Accordingly, Plaintiff's evidence creates a triable issues of fact concerning Defendants Dutton and Mason's motivation for writing the shake down slip and disciplinary report.  Resolving the facts in the light most favorable to the non-moving party, Defendants simply failed to meet their burden of establishing the absence of disputed issues of material fact that would allow this Court to grant summary judgment for Defendants Mason and Dutton on Plaintiff's retaliation claim against them.

### Qualified Immunity – Dutton and Mason

Defendants next contend that Defendants Dutton and Mason are entitled to qualified immunity.  Specifically, they argue "there is no case law that would put them on notice that their conduct somehow violated Plaintiff's rights" because Plaintiff did possess two inhalers and by confiscating them and writing up the documents related to the shakedown, they were only doing their job.  Doc. 39, p. 17.  If Defendants are correct, the Court must dismiss Plaintiff's claim against them despite the Court's decision mentioned above, because "qualified immunity is not simply a defense to liability but also provides immunity from suit." ***Moss v. Westerman*, 2009 WL 211148, *4 (S.D. Ill. Jan. 29, 2009)**.

> In determining whether qualified immunity applies, the Court engages in a two-step inquiry.  First, viewing the facts in the light most favorable to the plaintiff, the Court determines whether the official violated a constitutional right.  If the

answer is yes, the Court then asks whether that right was clearly established at the time of the violation.

*Id.* "To be clearly established the right in question must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." **Washington, 481 F.3d at 551**.  As stated above, there is a question of fact as to whether these Defendants, by writing up the disciplinary documents, *retaliated* against Plaintiff.  **Id.**  Moreover, the point is not that "a prison official can be liable for initiating disciplinary proceedings or reports when he believes an inmate has been insolent" . . . the issue is whether they can be held liable because these same acts were done in retaliation.  **Moss, 2009 WL 211148 at *4**.  Since "it is beyond dispute that inmates are entitled under the First Amendment to file grievances and lawsuits and that officers may not retaliate against them for exercising that right", Defendants' motion for summary judgment on the basis of qualified immunity is denied.

### Defendants Markel, Hamilton, and Mitchell

Defendants' motion for summary judgment as to Plaintiff's retaliation claim against defendants Markel, Hamilton, and Mitchell prevails for a number of reasons.

First, Plaintiff has failed to show the Court what constitutionally protected conduct he engaged in that triggered retaliation from *these defendants*. **See Kyle v. Morton High School, 144 F.3d 448, 455 (7th Cir. 1998) ("it is not enough to allege mere retaliation due to an improper motive; there must be an allegation of protected conduct.")**.  Unlike the evidence discussed above, Plaintiff fails to mention a grievance, lawsuit, or any other form of protected speech he engaged in that caused these defendants to retaliate. *See* Doc. No. 43, pp. 16, 19, 23-24.  Consequently, Plaintiff's retaliation claim against them cannot survive summary judgment. **Id. (noting**

"in the absence of speech  . . . there has been no constitutional violation cognizable under section 1983.") (citation omitted).

Second, Plaintiff's contentions that these three defendants all "assisted defendants Dutton and Mason *in their retaliatory acts against* Plaintiff because they knew the facts in the disciplinary report were false" are unfounded and conclusory and will not be considered simply because they are contained in an affidavit. ***See Lujan v. National Wildlife Fed'n,*** **497 U.S. 871, 888 (1990) ("The object of [Rule 56] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.");** ***see also Sample v. Aldi Inc.,*** **61 F.3d 544, 549 (7th Cir. 1995) (abrogated on other grounds)("[C]onclusory statements in an affidavit do not create an issue of fact.") (citations omitted).**

Third, Plaintiff's assertion that Defendants Hamilton and Mitchell "abused their power" by finding Plaintiff guilty for violating prison rules is tantamount to implying the committee's decision to discipline should be invalidated.  *See* Doc. No. 43, pp. 16, 19, 23-24.  Consequently, ***Heck v. Humphrey,*** **512 U.S. 477 (1994)** prevents these claims from going any further.  ***See Heck,*** **512 U.S. at 487 (when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence" a prisoner's claim is not cognizable under §1983);** ***see also Lusz v. Scott,*** **126 F.3d 1018, 1021 (7th Cir. 1997)("*Heck* applies to judgments handed down in prison disciplinary proceedings.")**.  The Court therefore grants Defendants' motion for summary judgment as to Defendants Markel, Hamilton, and Mitchell.

### Defendants Frey, Miller, and Walker

As noted above, Plaintiff chose not to respond Defendants' motion for summary judgment as to  Defendants Frey, Miller, and Walker.  *See* Doc. No. 43.  This failure to respond automatically results in a judgment for Defendants for Plaintiff has essentially admitted that Defendants' version of the facts is true**.  *See Flynn v.***

***Sandahl,* 58 F.3d 283, 288 (7th Cir. 1995) ("a non-movant's failure to respond to a motion for summary judgment is that it constitutes an admission by the non-movant that there are no disputed issues of genuine fact warranting a trial"); *see also Terrell v. American Drug Stores,* 2003 WL 21018084, \*\*1 (7th Cir. Apr. 28, 2003) (citations and quotations omitted) (noting courts "typically view the facts in the light most favorable to the non-moving party . . . but when a party fails to respond to a motion for summary judgment, its failure constitutes an admission ... that there are no disputed issues of genuine fact warranting a trial.").**  Since Defendant Miller testified that her decision to uphold the denial of Plaintiff's grievance was not motivated by retaliation but on the basis of the evidence before her, and Defendants Frey and Walker never even saw Plaintiff's grievance or disciplinary report, there is no disputed issue as to whether these Defendants retaliated against Plaintiff. The Court grants Defendants' motion for summary judgment as to Defendants Frey, Miller, and Walker.  *See* Doc. 31-2, Affidavit of Jackie Miller, ¶¶10-12; Doc. 39-2, Affidavit of Charlene Meskill, ¶ 9); Doc. 39-2.

Based on the foregoing, the Court need not reach the issues of whether Defendants Frey, Miller, Walker, Markel, Hamilton, and Mitchell are entitled to qualified immunity.  Similarly, the Court need not decide whether Defendants Frey and Walker can be held liable under 42 U.S.C. §1983 when they had no knowledge about Plaintiff's grievance.

## V.  <u>Conclusion</u>

Accordingly, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion for Summary Judgment (Doc. 39).  Specifically, the Court **GRANTS** the motion as to Plaintiff's retaliation claim against Defendants Markel, Hamilton, Mitchell, Frey, and Miller and **DENIES** the motion as to Plaintiff's retaliation claim against Defendants Mason and Dutton.  Further, the Court **DIRECTS** the Clerk of the Court to enter

judgment in favor of Markel, Hamilton, Mitchell, Frey and Miller and against Plaintiff on his retaliation claim at the close of the case.

**IT IS SO ORDERED.**

Signed this 9th day of March, 2009.

/s/        *David R Herndon*
**Chief Judge**
**United States District Court**